IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND



APR 2 3 2018

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND

_____
Keola-Hana Tootoo
Saphilom
_____

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-against-

Nationwide Mutual Insurance Company

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**Complaint for Employment Discrimination**

Case No. JKB 18CV1180

*(to be filled in by the Clerk's Office)*

Jury Trial:   ☐ Yes   ☐ No
           *(check one)*

I. The Parties to This Complaint

   A. The Plaintiff(s)

   Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

   Name: Keolattana Tootoo Saphilom
   Street Address: 4 Campbell Ct
   City and County: Stafford / Stafford County
   State and Zip Code: VA 22556
   Telephone Number: 22556
   E-mail Address: Annexrealestate@gmail.com

   B. The Defendant(s)

   Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

   Defendant No. 1
   Name: Nationwide Mutual Insurance Company
   Job or Title (if known):
   Street Address: 7125 Columbia Gateway Dr Ste 350
   City and County: Columbia / Howard County
   State and Zip Code: MD 21046
   Telephone Number: 410-423-6800
   E-mail Address (if known):

Defendant No. 2

    Name _____

    Job or Title _____
    (if known)

    Street Address _____

    City and County _____

    State and Zip Code _____

    Telephone Number _____

    E-mail Address _____
    (if known)

Defendant No. 3

    Name _____

    Job or Title _____
    (if known)

    Street Address _____

    City and County _____

    State and Zip Code _____

    Telephone Number _____

    E-mail Address _____
    (if known)

*(If there are more than three defendants, attach an additional page providing the same information for each additional defendant.)*

C. **Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is:

    Name *Nationwide*

    Street Address *7125 Columbia Gateway #30*

    City and County *Columbia / Howard County*

    State and Zip Code *MD 21046*

    Telephone Number *410-423-6802*

II.  **Basis for Jurisdiction**

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

- [✓] Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

    *(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

- [✓] Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

    *(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

- [✓] Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

    *(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

- [ ] Other federal law *(specify the federal law)*:
    _____

- [ ] Relevant state law *(specify, if known)*:
    _____

- [ ] Relevant city or county law *(specify, if known)*:
    _____

III. **Statement of Claim**

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐ Failure to hire me.
- ☑ Termination of my employment.
- ☐ Failure to promote me.
- ☑ Failure to accommodate my disability.
- ☑ Unequal terms and conditions of my employment.
- ☑ Retaliation.
- ☐ Other acts *(specify)*: _____

(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)

B. It is my best recollection that the alleged discriminatory acts occurred on date(s) __February – July 2016__

C. I believe that defendant(s) *(check one)*:

- ☑ is/are still committing these acts against me.
- ☐ is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- ☑ race __Asian__
- ☐ color _____
- ☑ gender/sex __Female__
- ☐ religion _____
- ☑ national origin __Laotian__
- ☑ age. My year of birth is __1/2/75__. *(Give your year of birth only if you are asserting a claim of age discrimination.)*
- ☑ disability or perceived disability *(specify disability)* __injuries from car accidents__

5

E. The facts of my case are as follows. Attach additional pages if needed.

_Please see attached complaint_

(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)

IV. **Exhaustion of Federal Administrative Remedies**

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on (date)

_December 2016_

B. The Equal Employment Opportunity Commission (check one):

☐ has not issued a Notice of Right to Sue letter.

☒ issued a Notice of Right to Sue letter, which I received on (date) _February 17, 2018_.

(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)

C. Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct (check one):

☐ 60 days or more have elapsed.

☒ less than 60 days have elapsed.

Case 1:18-cv-01180-JKB Document 1 Filed 04/23/18 Page 6 of 14

6



**Gilbert Employment Law, P.C.**

1100 Wayne Avenue, Suite 900 | Silver Spring, MD 20910
Ph: (301) 608-0880  Fax: (301) 608-0881
www.gelawyer.com

October 20, 2017

Dr. Phillip Hoefs
Investigator
U.S. Equal Employment Opportunity Commission
Baltimore Field Office
10 South Howard Street, 3rd Floor
Baltimore, MD 21201

Sent to: PHILLIP.HOEFS@EEOC.GOV

Re:   EEOC Charge No. 531-2017-01205C
      Keolettana Saphilom v. Nationwide Mutual Insurance Company
      Complainant's Reply to Employer's Position Statement

Dear Dr. Hoefs,

Please accept this letter as Complainant's reply to the Position Statement submitted by Nationwide Mutual Insurance Company ("Nationwide" or the "Employer") on July 14, 2017.

### I.   Introduction

Nationwide states that it takes care to not put employees in a position that compromises their safety. *See* Position Statement at 5. Therefore, it is difficult to understand why they would want to be exempt from a reasonable accommodation requirement under the Americans with Disabilities Act ("ADA") that puts employee safety first.

Nationwide states that it terminated Ms. Saphilom because Nationwide "determined that the modification [Ms. Saphilom] requested is not a reasonable accommodation because it would eliminate essential functions of [Ms. Saphilom's] position and pose an undue hardship on business operations." *See* Position Statement Exhibit G. As detailed below, Nationwide's legal analysis of the ADA is incorrect because Ms. Saphilom *can* perform the essential functions of her job, and the reasonable accommodations she seeks pose no undue hardship on Nationwide. The accommodations Ms. Saphilom sought are a form of job modification that Nationwide provides to other employees for a wide range of reasons, yet refused to provide to Ms. Saphilom.

### II.   Nationwide Misstates the Americans with Disabilities Act

Nationwide argues that the Americans with Disabilities Act ("ADA") does not protect Ms. Saphilom because Ms. Saphilom was unable to perform her job with or without reasonable accommodations. Nationwide's interpretation of the ADA is incorrect and should be disregarded.

### a. Ms. Saphilom can perform the essential functions of her job

Ms. Saphilom can perform the essential functions of her job. She only requires a reasonable accommodation for non-core functions of her job, and is entitled to these reasonable accommodations under the ADA.

Nationwide argues that because Ms. Saphilom's job description lists so called "essential functions," all items on this list are legally considered "essential functions" of her jobs under the Americans with Disabilities Act. This analysis fails under the ADA.

Essential job functions "mean the fundamental job duties" and "does not include the marginal functions of the position." *See Stephenson v. Pfizer, Inc.*, 641 F. App'x 214, 219-20 (4th Cir. 2016) *citing* 29 C.F.R. § 1630.2(n)(1); *Wyatt v. Md. Inst.*, 2012 U.S. Dist. LEXIS 30465, at *23 (D. Md. Mar. 7, 2012). "[I]f an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 579 (4th Cir. 2015) *citing* 42 U.S.C. § 12111(8). A job function is essential when "the reason the position exists is to perform that function, when there aren't enough employees available to perform the function, or when the function is so specialized that someone is hired specifically because of his or her expertise in performing that function." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 579 (4th Cir. 2015) (internal citations omitted). Where a duty in question "is only one of the many duties that [the employee] might perform," the duty may not be an essential function. *See Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d at 580. Evidence that other employees do not need to perform this job function is evidence that the function is not essential. *Id.* Furthermore, where there is "no evidence that *mastery* of the [job function] was essential," or that the employee "no longer [performing the job function] would negatively impact the office," the job function in question may not be an essential function. *Id. (emphasis added).*

The record in this matter demonstrates that physically climbing on roofs is not an essential function of Ms. Saphilom's job. First, the job description that Nationwide provided Ms. Saphilom (and that Nationwide relies upon in its Position Statement), shows that climbing on roofs is at best a marginal function of the job. *See* Position Statement, Exhibit 3. As the job description makes clear, claims examiners such as Ms. Saphilom primarily spend their time applying the policy holder's policy terms to the claims at hand; opening and closing complain files; "maintain[ing] current knowledge of insurance and applicable products/services [and] court decisions which may impact the claims function;" "maintain[ing] current knowledge of local industry repair procedures and local market pricing;" submitting incident reports; identifying potential fraud; and delivering customer service. *Id* at 1-2. In addition, the Employer lists the following Skills/Competencies required for the job:

> Proven ability to meet customer needs and provide exemplary service by informing customers of the claims process and ensuring a positive customer experience. Analytical and problem solving skills necessary to make decisions and resolve conflict in such areas as application of coverages to submitted claims, application of laws

of jurisdiction to investigation facts, application of policy exclusions and exceptions. Ability to establish repair requirements and cost estimates for property losses. Ability to evaluate and successfully negotiate property claims. Organizational skills to effectively prioritize work. Command of written and verbal communication skills for contact and/or negotiation with policyholders, claimants, repairpersons, attorneys, agents and the general public. Ability to efficiently operate a personal computer and related claims and business software. Provided leadership to to [sic] less experienced claims associates.

*Id.* At 2. Again, the skills and competencies required demonstrate that climbing roofs is a marginal, and not essential, function of this position. Because roof climbing "is only one of the many duties that [the employee] might perform," it is not an essential function. *See Jacobs* at 580. While the end of the position description lists roof climbing, it is clear from the entirety of the job description that this a marginal function. *See Id.* Furthermore, the entirety of the position description shows that "the reason the position exists" is not to climb on roofs, *Id.* At 579, nor is roof climbing a "function [that] is so specialized that someone is hired specifically because of his or her expertise in performing that function." *Id.*

There is no evidence that if Ms. Saphilom did not climb onto a roof, that is, "no longer [performed the job function, it] would negatively impact the office." *Jacobs* at 580. As detailed below and in Ms. Saphilom's charge of discrimination, many employees at Nationwide did not climb on roofs, either due to reasonable accommodations for medical conditions, or because the opportunity rarely arose. As such, climbing on roofs is not an essential function of Ms. Saphilom's position, and she is therefore entitled to a reasonable accommodation.

b. **Nationwide is required to provide Ms. Saphilom the same job modifications it provides to other employees**

Regardless of whether or not climbing up on roofs is an essential function of Ms. Saphilom's job, Nationwide violated the ADA in terminating Ms. Saphilom because the it did not grant Ms. Saphilom the same job modifications that it granted other employees. *See Jacobs v. N.C. Admin. Office of the Courts,* 780 F.3d 562 (4th Cir. 2015).

Nationwide stated to Ms. Saphilom and the other employees in her group that employees were *not* supposed to engage in any inspection activities they found risky, whether that was due to structural damage to the home they were inspecting, or disconcerting conduct by the insurance policy holder. This instruction was reiterated numerous times during the training and during the course of Ms. Saphilom's employment. It was also included in the operational handbook Ms. Saphilom received from Nationwide. Nationwide reiterated its commitment to this policy in its Position Statement. *See* Position Statement at 5.

Nationwide applied these safety policies to other employees. For example, Stacey Lindley was not required to climb roofs on account of her high blood pressure. Ms. Saphilom is also aware of an employee, who trained alongside Megan Livengood, who informed the trainer

that he was not comfortable climbing roofs. The trainer said he would not have to do so. Furthermore, Ms. Saphilom is aware of numerous employees who never climbed up on a roof because the individual roofs they were assigned to climb appeared unsafe, either due to their grade, condition, or height. In fact, the majority of the roofs in the sections of Maryland to which Ms. Saphilom was assigned were deemed unsafe for Nationwide employees to climb on because of "the roof is more than one-story, inaccessible due to roof pitch, or otherwise unsafe to access." *See* Position Statement at 5.

Ms. Saphilom intends to obtain additional information about the other employees at Nationwide who were exempt from climbing roofs and those who never had to do so during their employment with Nationwide.

### c. Ms. Saphilom's reasonable accommodation requests place no undue hardship on Nationwide.

The accommodations Ms. Saphilom requires impose no undue hardship on Nationwide. An undue hardship is one that "would be unduly costly, extensive, substantial or disruptive, or would fundamentally alter the nature or operation of the business." *See* EEOC Guidance on the ADA, "Your Responsibilities as an Employer." Among the factors to be considered in determining whether an accommodation is an undue hardship are "the cost of the accommodation, the employer's size, financial resources and the nature and structure of its operation." An employee "need only show that an 'accommodation' seems reasonable on its face," and then the employer "must show special (typically case-specific) circumstances that demonstrate undue hardship." *Reyazuddin v. Montgomery Cty.*, 789 F.3d 407, 414 (4th Cir. 2015)

Nationwide admits that it takes care to not put employees in a position that compromises their safety. *See* Position Statement at 5. Nationwide's business is set up so that employees do not have to take safety risks in order to climb roofs, and provides for a third party contractor ladder company to come and assist with roof inspections. *Id.* Nationwide expects that its associates will contact its ladder vendor "when the roof is more than one-story, inaccessible due to roof pitch, or otherwise unsafe to access." *Id.* Nationwide associates regularly avail themselves of this ladder vendor, in accordance with Nationwide's policies. Furthermore, the number of roofs in the region that Ms. Saphilom worked in that were just one story high and/or had a roof pitch that made them inaccessible is minimal. As Ms. Saphilom's colleagues noted, many employees at Nationwide were never assigned a claim that involved physically climbing onto a roof due to these factors.

Given the few roofs Ms. Saphilom was even potentially expected to climb, and that other associates were permitted to utilize a ladder vendor, allowing Ms. Saphilom to use a ladder vendor cannot be considered unduly costly or as disruptive to Nationwide's business.

Furthermore, even if, *arguendo,* Nationwide would consider it a financial hardship to allow Ms. Saphilom to use the ladder vendor for the few roof claims she received, Nationwide could allow Ms. Saphilom to switch the few roof claims she received with another employee who can climb roofs.

4

### III. Nationwide Improperly Assumed Ms. Saphilom was Incapable of Performing Other Functions of her Job.

Nationwide misinterprets the very medical note that Ms. Saphilom provided in support of her reasonable accommodation request. Nationwide stated that Ms. Saphilom provided a doctor's note stating that she required the "permanent accommodation" of "sedentary work." *See* Position Statement at 6. That is not accurate. Ms. Saphilom provided her physician's note which stated "patient *may do* sedentary work," *see* Position Statement, Exhibit F at 2 *(emphasis added)*. This note did *not* state that Ms. Saphilom could *only* do sedentary work. The same medical note stated that Ms. Saphilom was instructed to do home exercise. Even though sedentary work is a large portion of her work, *see supra,* §II(a), (b), at no point did Ms. Saphilom allege that she could do only sedentary work. Ms. Saphilom was and is able to drive to property sites and walk through and conduct the visual inspections necessary to perform her job. She merely could not climb on roofs or crawl.

Nationwide states that Ms. Saphilom's physician stated that her conditions were "permanent." *See* Position Statement at 6. Not so. Ms. Saphilom's physician merely stated that the conditions "[m]ay be permanent." Position Statement, Exhibit F at 2.

Overall, Nationwide's misrepresentation of the content of the physician's note and failure to seek clarifying information shows an unwillingness to engage in the interactive process, and evidences Nationwide's refusal to accommodate Ms. Saphilom.

### IV. Ms. Saphilom Did Not "Voluntarily resign" from Nationwide

Contrary to the Nationwide's assertions, Ms. Saphilom did not voluntarily resign. Ms. Saphilom wished to remain at her job; however, Nationwide did not give her this option. Despite actively looking for a job a Nationwide, Ms. Saphilom was unable to find a remotely comparable position in her field. The only positions available were outside of her field, substantially lower paying, and required a substantially longer commute.

### V. Ms. Saphilom's Sex and Race Discrimination Claims

Nationwide provides no rebuttal to Ms. Saphilom's claims that Matt Gerard was more lenient towards his male employees while being strongly critical of his female employees, including Ms. Saphilom. Nationwide does not rebut Ms. Saphilom's claims that "[w]hen male adjustors made mistakes, Matt corrected their work himself, spoon—fed the answers, and did not criticize the male employees." Complainant's Affidavit at 4. Nationwide also provides no legitimate non-discriminatory reason for why Ms. Saphilom worked long hours with no Catastrophy Duty ("CAT") pay (a premium pay rate given to employees who worked CAT duty), but her male colleagues were given CAT pay when they worked long hours. The disparate way that Mr. Gerard treated Ms. Saphilom compared to the male employees he supervised are glaring.

Similarly, Nationwide provides no rebuttal to Ms. Saphilom's allegations that Mr. Gerard's words and actions showed that he thought claims adjusting was a job for "for strong,

5

burly men, and not petite Asian women like [Ms. Saphilom]." *See* Affidavit at 5. The totality of the evidence shows that Mr. Gerard scrutinized Ms. Saphilom's work, denied her CAT pay, and ultimately sought to terminate her because due to his animus, he did not believe a petite Asian woman like Ms. Saphilom was suitable for a claims adjusting job.

## VI.   Conclusion

For the reasons stated herein, and in the complaint, we respectfully request that the EEOC issue a cause finding of discrimination, in accordance with the EEOC's own guidelines on the ADA, and in accordance with Fourth Circuit precedent on the application of the ADA. Ms. Saphilom is amenable to mediation to attempt to resolve this matter before a civil action is filed.

Respectfully,

/S/ **MICHAL SHINNAR**
Michal Shinnar
Daniel A. Katz
*Attorneys for Keolattana Saphilom*

Cc:   Keolattana Saphilom
      *Via email*

V.  **Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Loss of income, stress, suffering, and undue expenses for legal services.

VI. **Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

A. **For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: _____, 20__.

Signature of Plaintiff _____
Printed Name of Plaintiff _____

*(If more than one plaintiff is named in the complaint, attach an additional certification and signature page for each additional plaintiff.)*

B. **For Attorneys**

Date of signing: _____, 20__.

Signature of Attorney _____
Printed Name of Attorney _____
Bar Number _____
Name of Law Firm _____
Address _____
Telephone Number _____
E-mail Address _____