# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KEOLATTANA TOOTOO SAPHILOM, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO. JKB-18-1180 |
| NATIONWIDE MUTUAL INSURANCE COMPANY, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Pro se plaintiff Keolattana Tootoo Saphilom sued her former employer, Nationwide Mutual Insurance Company ("Nationwide"), alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et. seq*. Both parties have moved for summary judgment, and the cross-motions are fully briefed. No hearing is required. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, Saphilom's motion for summary judgment will be denied, and Nationwide's cross-motion will be granted.

### I.   *Factual and Procedural Background*

This dispute arises out of Saphilom's brief employment with Nationwide in 2016. Saphilom is a Laotian American woman born in 1975. (Saphilom Response and Decl. at 1, ECF No. 68.) Between the years 2010 and 2015, she suffered a series of injuries in automobile accidents, which left her with "health and physical limitations" preventing her from lifting heavy objects, climbing, or crawling, and otherwise caused her considerable persistent discomfort. (*Id.*; Saphilom Dep. Exs. 8, 11, Nationwide Mot. Ex. A, ECF No. 60-2.) In December of 2015 Saphilom

submitted an application to Nationwide for employment as a field claims property adjuster. (Mita Decl. Ex. BB., Nationwide Mot. Ex. B, ECF No. 60-3.) Specifically, Saphilom applied for the position of Field Claims Spec II, Property ("Field Claims Specialist"). (Mita Decl. Ex. AA-1.)

Nationwide's publicly posted job description of the Field Claims Specialist position includes a list of responsibilities relating to investigating and adjusting property loss claims. (*Id*.) In a "Job Conditions" section, the job description establishes that a Field Claims Specialist:

> Must be able to make physical inspections of property loss sites. Must be able to climb ladders, balance at various heights, stoop, bend and/or crawl to inspect vehicles and structures. Must be able to work out-of-doors in all types of weather.

(*Id.*) Just below the "Job Conditions" section, the job description includes an "ADA" statement explaining that the "above statements cover what are generally believed to be principal and essential functions of this job. Specific circumstances may allow or require some people assigned to the job to perform a somewhat different combination of duties." (*Id.*)

Saphilom submitted her application for the Field Claims Specialist role without reviewing the job description. (Saphilom Dep. 28:14–28:16.) Saphilom then interviewed for the Field Claims Specialist position with two Nationwide managers: Kenneth Moraski and Wilford Scott. (Saphilom Response and Decl. at 1.) The opposing parties' descriptions of these interviews differ. Scott testifies that he explicitly informed Saphilom that as a Field Claims Specialist, she would be "required to get on property roofs of 1-story buildings" and to "enter crawlspaces and attics." (Scott Decl. ¶ 6, Nationwide Mot. Ex. C, ECF No. 60-4.) By contrast, Saphilom claims in her Response and Declaration that there "was no mention or conversations of any requirements to physically be able to climb ladders" and that no one "ever asked about my physical and health conditions pertaining to ladders." (Saphilom Response and Decl. 1.) However, in her deposition, Saphilom did admit that she knew "there would be some sort of physical aspect because [she would

be] investigating potentially any part of the building." (Saphilom Dep. 33:12–33:16.) Undisputedly, Saphilom did not inform the interviewers of her injuries or request an accommodation. (*Id.* at 44:18–44:20; Scott Decl. ¶¶ 6–8.)

Nationwide offered Saphilom the Fields Claims Specialist job on January 5, 2016. (Saphilom Response and Decl. Ex. 3, ECF No. 68-1.) Saphilom then took part in a month-long orientation starting on January 19. (Saphilom Dep. 48:11-48:16; 52:11-52:19.) The orientation included a 45-minute Roof Inspections and Ladder Safety course, during which trainees were taught safety techniques related to ladder use. (Walker Decl. ¶ 7, Nationwide Mot. Ex. D, ECF No. 60-5). It also included a training regarding the appropriate use of third-party "Ladder Assist" vendors, to assist with roof damage claims assessments. (*Id.* ¶ 6). That training specified that Field Claims Specialists "could decide to use a Ladder Assist vendor when a roof is either too high or too steep" but that they should use vendors "sparingly" to avoid "additional expenses." (*Id.*)

Saphilom states that when she learned that a ladder would be assigned to her as equipment, she "was concerned and discuss[ed] the ladder and climbing roofs with [trainer] Wade Walker." (Saphilom Response and Decl. at 2.) According to Saphilom, "Mr. Walker simply advised Plaintiff, not to worry about roofs, since there were not a lot of roof claims in the assigned Montgomery County, Maryland area." (*Id.*)[1] Saphilom also claims to have heard second-hand that other trainees received disability accommodations permitting them to forego ladder training. (*Id.* at 4.)[2] In contrast, Walker claims, "I have never told a Claims Specialist that s/he does not

---

[1] Nationwide argues that the Court should "disregard[]" this purported statement because Walker has submitted a declaration "which directly refutes Plaintiff's contentions." (Nationwide Reply at 8 n.3, ECF No. 69.) This argument is unavailing. While Walker's declaration may create a dispute as to Saphilom's credibility, it certainly does not render Saphilom's testimony inadmissible. As such, and because Walker's purported statement is a non-hearsay opposing party statement under Federal Rule of Evidence 801(d)(2)(D), the Court will consider it on summary judgment. *See United States v. Bros. Const. Co. of Ohio,* 219 F.3d 300 (4th Cir. 2000).

[2] Nationwide also argues that the Court should "disregard[]" Saphilom's hearsay testimony regarding the experiences of other trainees as "not credible or admissible." (Nationwide Reply at 8–9 n.3.) This argument has merit. The alleged statements of fellow trainees Megan Livengood, Michael Wade, and Stacey Lindley regarding their personal

3

have to climb ladders or inspect roofs as part of his/her duties and responsibilities." (Walker Decl. ¶ 9.)

After completing her training, Saphilom began working as a field adjuster in late February. (Saphilom Dep. 48:11–48:16.) To cope with her inability to lift or use her ladder, Saphilom enlisted vendors' help with all her claims involving roof inspections, regardless of the height or grade of the roof at issue, and avoided engaging in any inspection activities that might exacerbate her injuries. (*Id.* at 66:14–67:19.) Though these practices defied company policy, Saphilom considered them consistent with the general rule that claims adjusters should "assume a defensive posture" and "remove [themselves] from any risky, threatening, or unsafe situation as soon as possible." (Saphilom Response and Decl. at 3; Saphilom Dep. 66:14–67:19.)

Saphilom struggled with the "stress and pressure" of her role and received poor performance evaluations from her manager, Matt Garrard. (Saphilom Response and Decl. at 3; Saphilom Mot. Ex. 19, ECF No. 58-1.) Saphilom blames Garrard for her issues at Nationwide, claiming that Garrard both critically micromanaged her and failed to support her in the ways he supported other employees. (Saphilom Response and Decl. at 3–5.) Saphilom also claims that Garrard was harder on her than certain male coworkers. (*Id.*)

Around early May 2016, Garrard scheduled a standard new employee "ride-along" with Saphilom so that he could observe Saphilom's performance in the field. (Saphilom Dep. at 86:1–87:22.) Two of Saphilom's claims scheduled for the day of the ride-along involved roof inspections. (*Id.*) Saphilom was unable to inspect the roofs with Garrard, and instead she informed

---

circumstances and observations are not "opposing party statements" under Rule 801(d)(2), and do not fall under any hearsay exception. As such, pursuant to Federal Rule of Civil Procedure 56(c)(2), the Court will disregard Saphilom's testimony regarding such alleged statements. *See Mandengue v. ADT Sec. Sys., Inc.,* Civ. No. ELH-09-3103, 2012 WL 892621, at *20 (D. Md. Mar. 14, 2012) ("'hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment'") (quoting *Md. Highways Contractors Ass'n v. Maryland,* 933 F.2d 1246, 1251 (4th Cir. 1991)).

Garrard that she could not lift her ladder or climb. (*Id*. at 88:7–88:12.) Following this disclosure, Garrard contacted Nationwide's Office of Associate Relations ("OAR") to initiate a disability accommodation evaluation. (Saphilom Response and Decl. at 4; King Decl. ¶ 4, Nationwide Mot. Ex. E, ECF No. 60-6.) On May 13, 2016, Saphilom spoke with a Nationwide Nurse and reported that "she cannot raise her arm above her head," or "climb a ladder without pain/ risk of exacerbating tear." (King Decl. Ex. 1.) OAR then arranged for a temporary accommodation whereby Saphilom would "not be required to carry or climb a ladder temporarily." (King Decl. ¶ 8.)

As a next step in the evaluation process, Saphilom completed an "associate statement" describing her condition. (Saphilom Dep. Ex. 8.) Saphilom reported: "Due to my herniated discs in my neck, back and shoulder tear, I have limits with lifting and carrying heavy things and climbing a ladder. There are certain movements that aggravate my injuries to where I am limited to movement. I have to pay attention to all my activities to avoid straining or aggravating my injuries." (*Id.*) At Nationwide's behest, Saphilom then obtained a formal evaluation from Dr. Charles Mess, a doctor of Saphilom's choosing. (Saphilom Dep. 103:20–104:18.) After examining Saphilom's injuries, Dr. Mess filled out an evaluation form describing the extent of her incapacity and the accommodations he deemed medically necessary. Dr. Mess explained, "patient cannot carry or lift greater than 5 lbs. She cannot climb or crawl. May be permanent." (Saphilom Dep. Ex. 11.) In response to a prompt regarding what modifications would enable Saphilom to "perform the functions or duties of [her] job," Dr. Mess wrote, "patient may do sedentary work and work with items less than 5 lbs." (*Id.*) Saphilom delivered Dr. Mess's evaluation to Nationwide. (Saphilom Dep. 117:12-118:2.) An OAR representative then reached out to Dr. Mess

directly for clarification regarding the diagnosis, and Dr. Mess confirmed that he believed Saphilom's limitations were permanent. (Saphilom Dep. Ex. 12.)

On June 27, OAR representative David King sent Saphilom a letter informing her, "the Company has determined that the modification you requested is not a reasonable accommodation because it would eliminate essential functions of your position and pose an undue hardship on business operations," and that as a result, she would be placed on unassigned status for a sixty day paid job search period, then terminated. (Saphilom Dep. Ex. 14.) King informed Saphilom that a Nationwide recruiter would assist her in finding alternative employment at Nationwide if she desired, and provided the recruiter's phone number. King also informed Saphilom that she could contact King by phone "if there is any change in your condition you feel needs to be reviewed." (*Id.*) Saphilom responded two days later, explaining that she needed some time to consider her options, but would be in contact. (Saphilom Dep. Ex. 13.) However, neither party followed up, and on August 25, Saphilom was terminated. (King. Decl. ¶¶ 13–16.)

Subsequently, on May 31, 2017, Saphilom filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). (Saphilom Dep. Ex. 16.) In her Charge, Saphilom alleged discrimination based on: (1) race, (2) sex, (3) national origin, and (4) disability. (*Id.*) Notably, she did not check the boxes for age discrimination or unlawful retaliation, or make any related allegations. (*Id.*) The EEOC provided Saphilom a Dismissal and Notice of Rights on February 15, 2018. (Compl. at 15–18, ECF No. 1.)

On April 23, 2018, Saphilom filed this lawsuit. (*Id.*) In the "Basis for Jurisdiction" section of her form Complaint, Saphilom checked the boxes for Title VII, ADA, and ADEA. (*Id.* at 4.) In the "Statement of Claim" section, Saphilom checked the descriptive boxes for: "Termination of my employment"; "Failure to accommodate my disability"; "Unequal terms and conditions of my

employment"; and "Retaliation." (*Id.* at 5.) Saphilom did not initially engage in the discovery process, and Nationwide made a series of motions to dismiss for failure to prosecute. (ECF Nos. 18, 33, 45.) However, after the Court enlarged the discovery period and granted Saphilom extensions (ECF Nos. 36, 37, 49), Saphilom did respond to Defendant's requests and sit for a deposition. (ECF No. 48.) Discovery ended on July 26, 2019.

On December 2, 2019, Saphilom moved for summary judgment. (Saphilom Mot., ECF No. 58.) Though Saphilom claimed entitlement to judgment on all counts, her briefing focused on her ADA claim, and did not delve into race, gender, national origin, or age-related issues. (*Id.*) Saphilom attached several documents to her motion, but did not provide supporting affidavits or deposition testimony. (Saphilom Mot. Exs., ECF No. 58-1.) Nationwide cross-moved for summary judgment on all counts on December 16, 2019. (Nationwide Mot., ECF No. 60.) In addition to documents and excerpts from Saphilom's deposition, Nationwide submitted four declarations in support of its motion, including the declarations of Property Claims Managers Wilford Scott and Wade Walker. Notably, these declarations provide testimony that Field Claims Specialist is "an active position," that Field Claims Specialists are required to "conduct physical inspections of their assigned personal lines property damage claims," and that "[d]epending on where the damage is located, claims specialists can and will be required to climb, crawl, bend, and lift." (Scott Decl. ¶ 5.) The declarations also specify that "even if a Ladder Assist vendor is being used to inspect the outside roof portion, the Claims Specialist may still be required to climb, crawl, or stoop to get to inspect other potentially damaged areas of the property." (Walker Decl. ¶ 6; Scott Decl. ¶ 10.)

On January 6, 2020, Saphilom requested an additional sixty days to submit her response to Nationwide's motion, and moved to compel the production of certain documents which she

contended Nationwide should have produced during discovery. (Mot. Compel and Continue, ECF No. 62.) The Court referred the dispute to Magistrate Judge Gesner, who denied the untimely motion to compel, but granted Saphilom a continuance. (Order on Mot. Compel and Continue, ECF No. 66). Saphilom filed a sworn response and declaration on February 3, 2020. (Saphilom Response and Decl.) On February 12, Nationwide filed its reply brief, and moved to strike fourteen exhibits attached to Saphilom's response and declaration that were not disclosed during discovery. (Nationwide Reply at 3–5, ECF No. 69.)

## II.    *Summary Judgment Standard*

A party seeking summary judgment must show "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If a party carries this burden, then the court will award summary judgment unless the opposing party can identify specific facts, beyond the allegations or denials in the pleadings, that show a genuine issue for trial. Fed. R. Civ. P. 56(e). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. To carry these respective burdens, each party must support its assertions by citing specific evidence from the record. Fed. R. Civ. P. 56(c)(1)(A). The court will assess the merits of the motion, and any responses, viewing all facts and reasonable inferences in the light most favorable to the party opposing the motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir.

2008). When both parties file motions for summary judgment, the Court evaluates "each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Bryant v. Better Bus. Bureau of Greater Maryland, Inc.*, 923 F. Supp. 720, 729 (D. Md. 1996) (citations omitted).

### III.    *Motion to Strike*

Before the Court can address the merits of the parties' cross-motions for summary judgment, the Court will first consider Nationwide's motion to strike fourteen exhibits Saphilom attached to her Response and Declaration: Exhibits 27, 30, 31, 32, B, B-1, B-2, C, D, E, L, L-1, M, and M-1. Nationwide claims that these exhibits are responsive to Nationwide's discovery requests, and that because they were not produced in discovery, Saphilom should be precluded from relying on them. Nationwide also complains that certain of the exhibits are dated after the close of discovery.

Federal Rule of Civil Procedure 37(c) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Though district courts have "broad discretion" in determining whether a failure to disclose is substantially justified or harmless, the Fourth Circuit has specified five factors to consider:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596–97 (4th Cir. 2003).

Looking to the exhibits identified by Nationwide, Exhibits 27, 30, 31, 32, C, D, and E appear to be Nationwide's own documents. Exhibits M and M-1 appear to be a record showing that a phone call Saphilom testifies she had with OAR representative King on June 17, 2016 did occur. Exhibits B, B-1, and B-2 appear to be correspondence between Saphilom and a ladder seller confirming that Saphilom received a ladder from Nationwide. Nationwide has not explained what surprise these exhibits occasion, and has, in fact, argued that they "bear little importance to the outcome of this case." (Nationwide Reply at 5.) The Court cannot see what harm Nationwide would suffer as a result of Saphilom introducing the documents, and mindful of Saphilom's pro se status, will not strike them.

However, the Court comes to the opposite conclusion regarding Exhibit L, which could cause just the sort of surprise and disruption the Fourth Circuit warned of. That document appears to be a print-out of a text message correspondence between Ms. Saphilom and former Nationwide Field Claims Specialist Stacey Lindley dated January 24, 2020, in which the two discuss the accommodations Lindley reportedly received from Nationwide before she was forced to go on disability. Exhibit L is problematic on a number of levels. To start the document was not produced during discovery. What is more, the conversation between Saphilom and Lindley is dated January 24, 2020, meaning that it occurred well after discovery closed, and indeed, after Saphilom had requested a continuance to enable her to respond to Nationwide's cross-motion for summary judgment. Additionally, to the extent that Saphilom intends to use the correspondence to prove that Lindley is comparably disabled and received a similar accommodation to the one Saphilom sought, it is inadmissible hearsay which the Court cannot consider under Federal Rule 56(c)(2)— not to mention too vague for the Court to reasonably rely upon. *See Precision Piping &*

*Instruments, Inc. v. du Pont de Nemours & Co.,* 951 F.2d 613, 619–20 (4th Cir.1991). The Court has granted Saphilom, a pro se plaintiff, substantial "leniency in navigating the legal system's unfamiliar terrain," but she is nonetheless bound by the "applicable federal rules of procedure," which require discovery to occur during the discovery period and establish clear rules governing the admissibility of evidence. *Adams v. Sharfstein*, Civ. No. CCB-11-3755, 2012 WL 2992172, at *4 (D. Md. July 19, 2012). As such, the Court will not consider Exhibit L.

## IV. ADA Claims

Turning to the merits of the cross-motions, the Court will first consider Saphilom's ADA claims, then her Title VII claims, and lastly her ADEA and retaliation claims.[3] In her Complaint, Saphilom identified Nationwide's discriminatory conduct as including both "[f]ailure to accommodate my disability," and wrongful "[t]ermination of my employment." (Compl. at 5.) The Court thus interprets the Complaint as stating both "failure to accommodate" and "wrongful discharge" theories of ADA liability, and will address each in turn. Fatal to both theories is Saphilom's failure to provide evidence contesting Nationwide's proof that Saphilom could not perform the essential functions of a Field Claims Specialist.

### a. Failure to Accommodate

To establish a prima facie case for failure to accommodate, Plaintiff must show: "(1) that [she] was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of [her] disability; (3) that with reasonable accommodation [she] could perform the

---

[3] In addition to her Title VII, ADA, and ADEA claims, Saphilom's Response and Declaration also charges Nationwide with breach of contract in relation to grievances regarding hours and pay. Because breach of contract was not alleged in the Complaint, and Saphilom has not sought or received leave to add that claim, it is not properly before the Court for disposition. *See Artis v. U.S. Foodservice, Inc.,* Civ. No. ELH-11-3406, 2014 WL 640848, at *19 (D. Md. Feb. 18, 2014) ("the liberal pleading standards mandated by the Federal Rules of Civil Procedure do not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage"); *Mylan Laboratories, Inc. v. Akzo, N.V.,* 770 F.Supp. 1053, 1068 (D.Md.1991) ("'[I]t is axiomatic that the complaint may not be amended by [a] brief[ ] in opposition'") (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984)).

essential functions of the position; and (4) that the employer refused to make such accommodations." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 579 (4th Cir. 2015) (alterations in original) (quoting *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013)). There is no dispute that Saphilom had a disability within the meaning of the statute. Her substantial injuries prevented her from climbing, crawling, or lifting, and rendered routine activities like driving, standing, and sitting uncomfortable. (Saphilom Dep. 107:20–107:22.) What is more, her doctor suggested that her injuries would permanently limit her to sedentary work. (Saphilom Dep. Exs. 11, 12.) Likewise, there is no dispute that Nationwide was on notice of Saphilom's disability once she disclosed it to Garrard, and that Nationwide declined to accommodate her. Summary judgment therefore ultimately turns on the third element—the availability of a reasonable accommodation.

A reasonable accommodation is a modification that "enables [a qualified] individual with a disability . . . to perform the essential functions of [her] position," 29 C.F.R. § 1630.2(o)(1)(ii). The "ADA does not require an employer to reassign any of the essential functions of a disabled employee, nor does it require an employer to hire additional employees to perform an essential function." *Stephenson v. Pfizer, Inc.*, 641 F. App'x 214, 219 (4th Cir. 2016) (citing *Martinson v. Kinney Shoe Corp.,* 104 F.3d 683, 687 (4th Cir. 1997)). "The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). It does not "include the marginal functions of the position." *Id.*

The ADA establishes that in determining what functions are essential, consideration must "be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this

description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). EEOC regulations specify that other relevant evidence includes "the amount of time spent on the job performing the function," "the consequences of not requiring the incumbent to perform the function," and the "work experience of incumbents in similar jobs." 29 C.F.R. § 1630.2(n)(3); *see also, Reyazuddin v. Montgomery Cty., Maryland,* 754 F. App'x 186, 189 (4th Cir. 2018) ("To determine whether a function is essential, we consider the employer's judgment, written job descriptions, and other defined factors").

A plaintiff claiming that she was denied a reasonable accommodation bears the "burden of identifying an accommodation that would allow [her] to perform the job," as well as "the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable." *Lamb v. Qualex, Inc.*, 33 F. App'x 49, 59 (4th Cir. 2002). Thus, to survive summary judgment, a plaintiff must "present evidence from which a jury may infer that [a proposed] accommodation is 'reasonable on its face.'" *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 464 (4th Cir. 2012) (quoting *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401–02 (2002)). Furthermore, she must provide evidence that the accommodation sought "would be 'effective,' *i.e.*, [it] would . . . address the job-related difficulties presented by [her] disability." *Bryant*, 923 F. Supp. at 736 (D. Md. 1996) (citing 29 C.F.R. § 1630.2(o)(1)(i)–(ii)).

The only accommodation Saphilom has advocated is that she should have been permitted to forego all roof inspections and instead have vendors conduct such inspections. The crux of Saphilom's argument is that personally inspecting roofs is not an essential function of a Field Claims Specialist, and that if outside contractors were to perform this allegedly marginal function for her, Saphilom would be able conduct all the essential functions of the job. Nationwide counters that Saphilom's requested modification fails the "reasonable accommodation" test because

13

personally conducting full physical inspections of her assigned properties—including both one-story roofs and other areas accessible only by climbing, crawling, or performing other physical tasks that would be impossible for Saphilom—is an essential function of the Fields Claim Specialist role, which Saphilom was unable to perform. (Nationwide Reply at 7–8.)

After carefully reviewing each party's submissions, the Court finds that there is no genuine dispute of material fact that personally inspecting assigned properties, including difficult-to-access areas, is an essential function of the Field Claims Specialist role that Saphilom was unable to perform. Nationwide has proffered compelling evidence in relation to both 42 U.S.C. § 12111(8) factors. To start, Nationwide has shown that the Field Claims Specialist job description undisputedly specifies that a Field Claims Specialist "[m]ust be able to make physical inspections of property loss sites [and must] be able to climb ladders, balance at various heights, stoop, bend and/or crawl to inspect vehicles and structures." (Mita Decl. Ex. AA-1.) Likewise, Nationwide has provided unchallenged testimony in the Scott and Walker declarations that Nationwide considers fully inspecting even relatively inaccessible areas of the properties to which they are assigned an essential function of Field Claims Specialists. These declarations also speak to the "work experience of incumbents in similar jobs," 29 C.F.R. § 1630.2(n)(3)(vi-vii), and provide evidence that such incumbents are sometimes "required to climb, crawl, or stoop to get to inspect [] potentially damaged areas of the property" to which they are assigned. (Walker Decl. ¶ 6; Scott Decl. ¶¶ 5, 10.)

Saphilom has not provided more than a scintilla of countervailing evidence. Saphilom's testimony regarding her own experience as a Field Claims Specialist is insufficient to create a triable question of fact regarding the importance of being able to physically inspect difficult-to-access areas, particularly given Saphilom's very brief tenure and her evident misinterpretation of

generalized safety policies regarding "assum[ing] a defensive posture and remov[ing] yourself from any risky, threatening, or unsafe situation" as authorizing her to avoid all aspects of the job which her physical limitations made difficult. (Saphilom Response and Declaration at 2–3.) *See Dropinski v. Douglas County,* 298 F.3d 704, 709 (8th Cir. 2002) (Employee's "specific personal experience is of no consequence in the essential functions equation. Instead, it is the written job description, the employer's judgment, and the experience and expectations of all [employees who perform the job] generally which establish the essential functions of the job."). Likewise, Saphilom's testimony that Walker advised her "not to worry about roofs" and that her interviewers did not specifically mention roofs does not draw into doubt that, roofs aside, performing complete physical inspections, including of difficult-to-access areas, was an essential element of Saphilom's field role that she could not perform. And while Saphilom has made allegations and inadmissible assertions that the experiences of other Field Claims Specialists contradict Nationwide's description and suggest that inspecting difficult-to-access areas is a marginal function, she has not submitted potentially admissible documents or testimony substantiating her claims.

At bottom, Saphilom has failed to provide any evidence drawing into question Nationwide's proof that a Field Claims Specialist must be able to fully inspect even difficult-to-access areas of a property in order to effectively perform the essential functions of her role. The evidence presented requires the conclusion that having vendors conduct inspections of roofs for Saphilom would not remediate all the job-related difficulties presented by her disabilities, and that having fellow Field Claims Specialists or vendors handle all physically strenuous inspection activities would shift essential "physical duties of her position to another employee" or contractors. *Wells v. BAE Sys. Norfolk Ship Repair*, 483 F. Supp. 2d 497, 509–10 (E.D. Va.), *aff'd*, 250 F. App'x 552 (4th Cir. 2007). As such, summary judgment must be granted to Nationwide. *See*

*E.E.O.C. v. Womble Carlyle Sandridge & Rice, LLP,* 616 F. App'x 588 (4th Cir. 2015) (summary judgment for employer where job description required employee to be able to lift heavy boxes and her doctor stated she could not lift in excess of 20 pounds); *Brown v. Huntington Ingalls Inc.,* 489 F. App'x 646, 647–48 (4th Cir. 2012) (summary judgment for employer where plaintiff "failed to produce competent or admissible evidence" contradicting employer's proof that she could not perform essential physical functions of role).

### b. *Wrongful Discharge*

Because Saphilom has not adduced evidence that she could have performed the essential functions of a Field Claims Specialist with a reasonable accommodation, Saphilom also cannot survive summary judgment on her wrongful discharge claim. "To avert summary judgment, a plaintiff alleging a wrongful discharge claim under the ADA generally may attempt to prove his or her case by coming forward with direct or indirect evidence of discrimination, or by proceeding under the burden-shifting framework set forth in *McDonnell Douglas*." *Wells*, 483 F. Supp. 2d at 507 (citing *Cline v. Wal–Mart Stores, Inc.,* 144 F.3d 294, 303 (4th Cir. 1998)). "Where, as here, the plaintiff was discharged for reasons having some relation to his or her disability, it is proper to analyze the plaintiff's wrongful discharge claim under the direct scheme of proof." *Id.* at 507–08 (citing *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.,* 31 F.3d 209, 211–12 (4th Cir. 1994)). To directly prove wrongful discharge, Saphilom must show that (1) she has a "disability," (2) she was "qualified" for the Field Claims Specialist position, and (3) her termination "constitute[d] an unlawful 'discrimination.'" *See Tyndall,* 31 F.3d at 212. The question of whether an employee is "qualified" under the ADA turns on whether she could perform the "essential functions" of her role, "with or without reasonable accommodation." 42 U.S.C. § 12111(8).

For the reasons discussed above, the Court finds as a matter of law that Saphilom has not put forth evidence supporting a finding that she could perform the essential functions of the Field Claims Specialist role with or without reasonable accommodation. As such, she cannot establish that she was a "qualified individual," and summary judgment will be granted to Nationwide.

## V. *Title VII Claims*

In addition to claiming disability discrimination, Saphilom has also alleged that Nationwide unlawfully discriminated against her based on her race (Asian), gender/sex (Female), and national origin (Laotian), in violation of Title VII. (Compl. at 5.) In order to prove a Title VII claim, a plaintiff must either "present evidence (direct or indirect) that [her] employer had a discriminatory motive when it initiated a negative employment event against [her]," or "engage in the familiar, three-step burden-shifting approach first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Willis v. Anne Arundel Cty., Maryland*, Civ. No. JKB-16-1388, 2017 WL 952686, at *5 (D. Md. Mar. 10, 2017), *aff'd*, 706 F. App'x 116 (4th Cir. 2017).

Saphilom has presented no direct or indirect evidence of discriminatory motive. Therefore, her Title VII claims must be analyzed according to the *McDonnell Douglas* pretext framework. Under that framework, a plaintiff may make a prima facie case of discrimination by showing that: "(1) [she] is a member of a protected class; (2) [she] suffered adverse employment action; (3) [she] was performing [her] job duties at a level that met [her] employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007). If the plaintiff carries that initial burden, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment

action." *Id.* If the employer does so, the burden finally returns to the plaintiff to show that the defendant's explanation is merely a pretext. *See id.*

Here, Saphilom has failed to proffer evidence sufficient to support a prima facie case. She has shown that she was a member of three protected classes and that she suffered an adverse employment action. But she has not provided evidence indicating that she was performing her job at a level that met her employer's legitimate expectations. The undisputed evidence instead reveals that Saphilom was avoiding personally examining roofs that Nationwide policy required her to inspect, and that she was otherwise incapable of inspecting difficult-to-access areas. Furthermore, Saphilom has not provided any evidence indicating that "the position remained open or was filled by similarly qualified applicants outside the protected class," nor that "similarly situated employees outside of the plaintiff's protected class[es] were treated more favorably." *Hart v. Broadway Servs., Inc.*, 899 F. Supp. 2d 433, 442 (D. Md. 2012). Indeed, Saphilom does not mention the race of any other Nationwide employee, and mentions Garrard's alleged preference for male subordinates only in passing. What is more, even if Saphilom had carried her prima facie burden, Nationwide has consistently provided an unrebutted legitimate and nondiscriminatory (for Title VII purposes) reason for her termination—namely, that Saphilom's substantial physical limitations prevented her from fully performing inspections of assigned properties. Therefore, summary judgment will be granted to Nationwide on the Title VII claims.

### VI. *Retaliation and ADEA Claims*

Lastly, Saphilom's retaliation and age discrimination claims must be dismissed because Saphilom failed to exhaust her administrative remedies with regard to those claims. "Before a plaintiff has standing to file suit" for employment discrimination under Title VII, the ADA, or the ADEA, "[s]he must exhaust [her] administrative remedies by filing a charge with the EEOC."

*Bryant v. Bell Atl. Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). Further, the "scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents." *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). Accordingly, "the factual allegations made in formal litigation must correspond to those set forth in the administrative charge," and, "the plaintiff's claim generally will be barred if his charge alleges discrimination on one basis—such as race—and he introduces another basis in formal litigation—such as sex." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005).

Here, Saphilom did not check the boxes for retaliation or age discrimination in her charge with the EEOC or include any allegations reasonably related to such claims. (Saphilom Dep. Ex. A-16.) As such, she has not administratively exhausted her remedies with regards to these claims, and they must be dismissed.[4] *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996) (finding ADEA claim barred where EEOC charge alleged only sex discrimination); *Plummer v. Wright,* Civ. No. TDC-16-2957, 2017 WL 4417829, at *8 (D. Md. Oct. 3, 2017) (dismissing retaliation claim where plaintiff "failed to check the 'retaliation' box in her [] EEO Complaint or otherwise allege retaliation elsewhere in that filing").[5]

## VII. *Conclusion*

For the foregoing reasons, an order shall enter denying Saphilom's motion for summary judgment and granting Nationwide's cross-motion for summary judgment.

---

[4] Though *Fort Bend Cty., Texas v. Davis* abrogated *Jones* by ruling that this bar is a prudential prerequisite to suit and is therefore subject to waiver, Nationwide asserted this argument in both its Answer its first dispositive motion on the merits (the summary judgment motion) and therefore has not waived it. 139 S. Ct. 1843 (2019).

[5] It bears noting that Saphilom has not contested Nationwide's administrative exhaustion arguments. What is more, she did not argue age discrimination in her summary judgment papers, aside from making a non-specific reference to the allegations in the first paragraph of her Response and Declaration. And to the limited extent she addressed retaliation, her focus was on Garrard's responses to activities not protected by any of the statutes at issue.

DATED this 2nd day of April, 2020.

BY THE COURT:

/s/

James K. Bredar
Chief Judge